In re the SIRE PLAN, INC., et al., Debtors.

No. 63 B. 140.

United States District Court
S. D. New York.

July 23, 1963.

Charles Seligson, New York City, for trustees; Charles Seligson, Harvey R. Miller, New York City, of counsel.

Richard V. Bandler, New York City, for Securities and Exchange Commission; Donald J. Robinson, New York City, of counsel.

Jacob Rassner, New York City, for Albert Mintzer; and Albert Mintzer, New York City, attorney pro se.

I. Arnold Ross, New York City, for Leo Ritter & Co., Mortgagee.

Natanson, Gordon & Reich, New York City, for Fifty Seven Associates, Landlord; George Natanson, New York City, of counsel.

Newcomb B. Pines, New York City, for Joel Weiser.

SUGARMAN, District Judge.

Sire 57th Street Plan, Inc. (hereinafter referred to as the "debtor") is a New York corporation which was incorporated on or about the 22nd day of October, 1958. It is one of a number of affiliated corporations which filed a joint petition for reorganization under Chapter X on the 16th day of February, 1963. The debtor is the owner by assignment of a leasehold on premises known as 408 West 57th Street, New York, New York, under which Fifty Seven Associates, a partnership, is the landlord. The debtor was organized for the express purpose of acquiring that leasehold. The lease is for a term of fifteen years commencing on the first day of March, 1957 and terminating on the 28th day of February, 1972. This lease, however, contains four renewal options for terms of twenty-one years each. The rent currently payable under the lease is $150,500.04 per annum or $12,541.67 per month. As additional rent, the debtor is required to pay taxes and assessments which presently approximate in excess of $67,000 per year. This additional rent is payable to the landlord on a monthly basis, the taxes and assessments being estimated for annual purposes and one-twelfth thereof being paid each month.

The acquisition of the leasehold by the debtor was intended to be financed by a public offering under which the debtor proposed to raise a total of $400,000. The offering to the public was made by a circular dated November 17, 1958 and was limited to residents of the State of New York. The debtor proposed to sell 4,000 fifteen year installment debentures, with interest ranging from 6% to 8½% per annum (depending upon income), in multiples of $50.00 each and 4,000 shares of 6% cumulative non-callable participating preferred stock having a par value of $50.00. The preferred stock and debentures were sold in units of $100 each, the offering was fully subscribed and these units are now held by 337 investors.

The original lease was made by Fifty Seven Associates, as landlord, with the 408 W. 57 St. Corp., as tenant. This lease was assigned to the debtor by the 408 W. 57 St. Corp. under an Indenture of Assignment dated December 3, 1958. The actual purchase price paid by the debtor for the leasehold seems to have been $267,000.

Thereafter, and on January 20, 1960, the debtor executed and delivered a leasehold mortgage in the sum of $140,000 to the Pitkin Auto Exchange, Inc., as mortgagee, which mortgage was duly record-

ed. By assignment dated January 1, 1961, Pitkin Auto Exchange, Inc., as mortgagee, assigned the mortgage to one Moe Steinberg, which assignment was likewise duly recorded. On or about the 20th day of November, 1961, Moe Steinberg assigned the leasehold mortgage to Leo Ritter & Co., a partnership. At that time, the balance due on the mortgage had been reduced to $96,000. On the same day, the debtor executed and delivered to Leo Ritter & Co. an additional mortgage on the leasehold in the principal sum of $54,000. This latter mortgage and the assigned mortgage were then consolidated to form a single consolidated mortgage lien of $150,000 on the leasehold. Subsequently, and on November 27, 1962, Leo Ritter & Co. and the debtor entered into an agreement extending the time of payment of the consolidated leasehold mortgage. Thereafter, and on the 28th day of December, 1962, the debtor defaulted in the making of a payment then due under the extension agreement, and no payments have since been made on that leasehold mortgage.

The actual consideration received by the debtor from the Pitkin Auto Exchange, Inc. for the $140,000 leasehold mortgage was $120,400. The amount received from Leo Ritter & Co. for the additional mortgage of $54,000 was $45,000. The offering circular provided, *inter alia*, that the debtor "may not incur any obligation for borrowed money except for its corporate purposes, including all costs required for the proper maintenance of any property it may acquire, without first obtaining the prior written consent of the holders of a majority of the Debentures, which consent is not required in the event of (a) the creation of additional mortgage or mortgages for the purpose of applying the proceeds to the reduction or payment of the unpaid principal of the Debentures, or (b) the re-financing of any mortgage which may at any time be a lien on any property the Corporation may acquire for the purpose of obtaining a new mortgage or mortgages on more favorable terms. (Sec. 5:10)." The section reference, that is, Sec. 5:10, relates to a substantially similar provision in a Trust Agreement dated as of the 10th day of November, 1958 between the debtor, The Sire Plan, Inc. and one Carlisle Davidson as Indenture Trustee.

The offering circular refers to a first mortgage on the fee and specifically states that the debtor "will be under no obligation to make * * * mortgage payments because they are required to be made by * * * landlord out of the * * * specified rental it is entitled to under the leasehold." This circular further provides that the "leasehold will be subject and subordinate to the first mortgage and any renewals or replacement thereof and to any new first mortgage that may thereafter be placed on the property provided such first mortgage is an 'institutional' loan and the payments called for thereunder do not exceed the amount of the rent that the owner is entitled to receive under the leasehold." In addition, the offering circular states that "(a)s a general policy, SIRE Plan offerings involve only the financing of acquisition of title to rental income real estate on a free and clear basis or subject only to a first mortgage." Nowhere in the offering circular or in the Trust Agreement of November 10, 1958 is there any indication that the debtor intended to place a mortgage on the leasehold.

It is also interesting to note that the reorganization petition herein, contents of which this court may take judicial notice, contains a specific statement to the effect that the books and records of the debtor do not reflect any leasehold mortgage indebtedness whatever either to Pitkin Auto Exchange, Inc., Moe Steinberg or Leo Ritter & Co. The trustees have advised the court that their investigation into the circumstances under which the leasehold mortgages were executed and delivered has not yet been completed but they have also intimated that at some future date appropriate action may be taken to invalidate such mortgages. It is unnecessary for the court at this time to express any opinion

on the validity of the leasehold mortgages since that question is not before it. It is important, however, for the court to keep this possible challenge in mind in the light of the motions hereafter discussed.

On or about the 31st day of December, 1962, an action was instituted in the New York State Supreme Court, County of New York, entitled Sire Plan, Inc., et al., v. Mintzer, 38 Misc.2d 920, 237 N.Y. S.2d 123. In that action John T. Cahill, Esq. was appointed receiver of the debtor and affiliated corporations which are likewise in reorganization. The order of appointment contained the usual restraint against the prosecution of any action in law or in equity against the debtor or the affiliated corporations and against the foreclosure sale or other disposition of any property held as security for loans made to any of these corporations without leave of that court.

Subsequently, and by order to show cause, dated January 30, 1963, Leo Ritter & Co. moved in the New York State Supreme Court action for an order authorizing and permitting Leo Ritter & Co., a co-partnership, to institute, prosecute and continue to prosecute an action for the foreclosure of the leasehold mortgage then held by the co-partnership on the property in question.

The reorganization petition of the debtor and the affiliated corporations was approved by this court on February 16, 1963 when the petition was filed. In the absence of a provision to the contrary, this order of approval operated to stay the pending equity receivership proceeding in the New York State Supreme Court. Bankruptcy Act § 148. Thereafter, and on the 18th day of February, 1963, Lazarus Joseph, Esq. and David I. Shivitz, Esq. were appointed reorganization trustees for the debtor, duly qualified and are presently acting as such reorganization trustees. The order of appointment specifically provided that:

"Until final decree or the further order of this court, all creditors and stockholders, and all sheriffs, mar-shals and other officers, and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity against said debtors or said trustees in any court, or from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon any property owned by or in the possession of the said debtors or said trustees, and from doing any act or thing whatsoever to interfere with the possession or management by said debtors or said trustees of the property and assets of the within estates, or in any way interfere with said trustees in the discharge of their duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over said debtors and said trustees and their respective properties; and all persons, firms or corporations owning any lands or buildings occupied by said debtors or said trustees or wherein is contained any property of the within estates be, and they hereby are, jointly and severally, stayed, pending the further order of this court, from removing or interfering with any such property. Without limiting the generality of the foregoing, and until further order of the court, the following actions, suits or proceedings be, and they hereby are, enjoined and stayed:

\* \* \* \* \* \*

"(n) Action instituted in the Supreme Court of the State of New York, New York County, entitled Leo Ritter & Co. v. Sire 57th Street Plan, Inc., et al.;"

The order appointing the trustees also provided that the trustees should by June 4, 1963 or such later date as the court might fix, file a report as to all executory contracts of the debtor with recommendations as to assumption or rejection thereof. Further, it specifically stated that "(t)he continued performance of any such contract by the trustees (whatever be the nature of such performance) during said period (as it may be extended) shall not be deemed to diminish, impair or affect in any way the right of the trustees or the court to reject such contract."

On March 5, 1963, and based upon a petition of Leo Ritter & Co., an order was made by this court in connection with the debtor requiring the trustees to show cause on the 6th day of March, 1963, why an order should not be made directing the trustees to pay to Fifty Seven Associates (landlord) the sum of $18,650.92, forthwith being the rent allegedly owing on the leasehold for February 1963 and directing the trustees to pay a similar sum for rent by the tenth of each and every month during their occupancy of the premises. The hearing on this order to show cause was adjourned from the 6th day of March, 1963 to the 20th day of March, 1963. In the meantime and on the 12th day of March, 1963, based upon an application of the reorganization trustees, this court made an order requiring Fifty Seven Associates (a partnership), landlord of the premises, as aforesaid, to show cause why the court should not stay and restrain such landlord for a reasonable period of time from exercising its right to terminate the lease of March 1, 1957 held by the debtor as assignee-tenant. This order to show cause was likewise made returnable on March 20, 1963.

At the hearing on March 20, 1963, counsel for the trustees, Charles Seligson, Esq., reported that a stipulation had been worked out with George Natanson, Esq., counsel for Fifty Seven Associates, fee owner of the real estate, under which the trustees would pay to the landlord the sum of $15,000 each month during March, April and May or the net amount remaining after the rental collections each month after payment of all expenses of operation and maintenance including management fees, whichever was greater. Counsel for the trustees further advised the court that as to February 1963, the trustees would turn over to the landlord the total rentals received by John T. Cahill, Esq., the State Court receiver, less maintenance charges and other charges which Mr. Cahill might be entitled to deduct by reason of the State Court receivership.

In connection with the trustees' application, Leo Ritter & Co. submitted an affidavit of Sidney Ritter, sworn to the 18th day of March, 1963 in which the partnership of Leo Ritter & Co. asked for a direction that the trustees either make provision for the immediate payment of the sums owing and to be owing as rent to the landlord of the building or forthwith consent that the mortgagee of the said leasehold obtain an order from this court approving foreclosure of said mortgage. Leo Ritter & Co., by its counsel, also opposed the tentative understanding which had been reached by trustees' counsel with counsel for the landlord. In connection with that opposition, counsel for Leo Ritter & Co. argued that if the trustees had then decided to give up the leasehold and consented to its foreclosure, the mortgagee would not only make up all of the arrears to the owners forthwith but would proceed to foreclose and try to run the property as the mortgagee thought it ought to be run and try to salvage as much of the leasehold as could be salvaged under those circumstances. The motions were adjourned to May 28, 1963 and trustees' counsel was instructed in the meantime to settle an order on the stipulation between the trustees and the fee owners regarding the operation of the property during March, April and May 1963. No order has been submitted for settlement either by trustees' counsel or counsel for the fee owner.

On or prior to the adjourned hearing on May 28, 1963, Fifty Seven Associates,

the landlord and fee owner of the property in question, filed an answer to the trustees' application. This answer conceded that payments of $15,000 had been made by the trustees to the landlord for each of the months of March and April 1963 but alleged that no payment had as yet been made for May 1963 or for February 1963. As an affirmative defense, the landlord pleaded that the trustees had failed to manage the building in an adequate and efficient manner and had failed to make adequate efforts to procure new tenants, collect rent in arrears and generally to conduct the business of the building. In support of this defense, the answer also alleged that when Mr. Cahill was appointed receiver there were approximately six vacant apartments, that when the trustees took possession there were approximately twelve apartments vacant and that on the 22nd day of May, 1963 there were approximately twenty-seven vacant apartments. At the hearing on May 28, 1963, the landlord also submitted a cross-application for an order directing the trustees forthwith to assume or reject the subject lease.

On May 28, 1963, a further hearing was held by the court on all of the pending applications. In connection with this hearing an affidavit was submitted by Toby G. Ritter on behalf of the co-partnership of Leo Ritter & Co. This affidavit was submitted as a supplement to the application of Leo Ritter & Co. for an order directing the trustees to pay Fifty Seven Associates $18,650.92, or so much thereof as might still be owing for the month of February 1963, and continuing to pay the said sum as might be due under the subject lease, or, in the alternative, to abandon the property. For the first time, Leo Ritter & Co., in filed papers, injected in the proceeding the proposal that the trustees be directed to abandon the leasehold estate if payments due to the landlord were not made. After hearing argument of counsel and certain records had been offered and received in evidence, the court reserved decision on the pending motions. Counsel for the trustees, however, was requested to submit a proposed order in line with certain recommendations which had been made by such counsel during the course of the hearing. It was stipulated that the landlord would receive whatever moneys would be available from collections after necessary expenses had been paid but that the managing agent of the trustees would not make any expenditures for maintenance and improvements (other than in the usual course of operations) without the approval of the landlord. In passing it should also be noted that at this hearing, trustees' counsel made it clear that although no part of the income had been or would be used for any expense other than operating purposes, the trustees and their counsel waived no rights which they might ultimately have in respect of the leasehold or the income therefrom.

On the 29th day of May, 1963 upon an application of the trustees, this court made an order directing the trustees to file a plan of reorganization or a report of their reasons why a plan could not be effected with respect to the debtor on or before the 5th day of June, 1963. This order further provided that a hearing pursuant to Section 169 of the Bankruptcy Act be held on June 27, 1963; that all pending applications be adjourned and considered and acted upon in connection with the hearing under said Section 169; that the trustees be directed to recommend assumption or rejection of the lease with respect to 408 West 57th Street, New York, New York, on or before the 27th day of June, 1963; and that the trustees be directed to give due notice of the said hearing to all parties in interest both by mail and publication. Pursuant to this order of May 29, 1963, due notice of the hearing under said Section 169 and the pending applications was given and parties in interest were advised that in the opinion of the trustees a plan of reorganization involving the retention of the leasehold could not be effected. All parties in interest, however, were also advised that at the hearing under said Section 169, consideration would be given to any plan which might

be proposed by the debtor, by any creditor or stockholder or other interested party.

The trustees' report why a plan of reorganization could not be effected was filed on June 5, 1963. This report made a full disclosure of the acquisition of the property by the debtor, the mortgages placed thereon, the steps taken in the reorganization proceedings and the results of operations under the trustees' management. It concluded with a statement that because of the circumstances disclosed, the trustees had been unable to formulate a plan of reorganization with respect to the debtor and would recommend termination of the lease unless a creditor, investor, debtor, stockholder or other interested party proposed a feasible plan of reorganization.

■ Pursuant to the order of this court of May 29, 1963, a hearing under Section 169 of the Bankruptcy Act was held on June 27, 1963. At that time a proposed plan of reorganization was submitted and filed on behalf of one Joel Weiser, an investor. Testimony was adduced as to the condition of the property and its projected earnings and the Weiser plan of reorganization was rejected by the court since it failed to satisfy the provisions of Section 216 of the Bankruptcy Act and was not deemed to be feasible since it assumed the invalidity of the leasehold mortgage. It was decided by the court, however, that additional efforts should be made to explore the possibility of an amendment or modification of the Weiser plan and that further time should be provided for the possible submission of other plans. Accordingly, the hearing on all matters was adjourned to July 9, 1963.

At the adjourned hearing on July 9, 1963, an amended plan of reorganization was submitted by Joel Weiser. In addition, a proposed plan of reorganization was submitted by Albert Mintzer, the original chief executive officer of the Sire Plan corporations in reorganization who had theretofore been designated to receive notice of all matters initiated by the trustees. The trustees offered proof as to the condition of the property in question, the projected income and the costs and expenses relative to the operation thereof. It was also established by the trustees, without contradiction, that the fair and reasonable rental value of the subject property was $11,800 per month. The trustees advised the court that assuming the validity of the leasehold mortgage, they could not present a fair, equitable and feasible plan of reorganization which would provide for the retention of the leasehold. Counsel for the trustees pointed out, as he had advised the court at the hearing on June 27, 1963, that the reorganization petition insofar as it affected the debtor could not be dismissed under Section 236 of the Bankruptcy Act because the leasehold might not be the only asset of the debtor corporation. The debtor might have claims against other corporations or persons so that it might be possible to formulate a plan of reorganization even without the leasehold. In any case, as counsel for the trustees indicated, certainly the proceeding involving the debtor could not be dismissed prior to the completion of the investigation involving all of the Sire Plan corporations in reorganization and the resolution of possible claims, one against the other for monies of one which may have been expended on behalf of another of the corporations.

The testimony adduced at the hearing on July 9, 1963 made it abundantly clear that not only had the subject real estate been well managed during the trustees' operation and management but the condition of the real estate had been substantially improved by such management and operation. It is true that the proof offered on July 9th established that when the trustees were appointed there were eight vacancies whereas at the time of the hearing there were thirty. However, the proof also made it plain that in addition to the eight vacancies when the trustees took possession and control, there were four apartments from which no rentals were being collected, that twenty-

one tenants were in arrears in the payment of rent, totaling $6,415, and that thirty-two tenants had moved from the premises during 1962 owing past due rentals. At the present time there are no tenants occupying apartments rent free. Under the trustees' administration the physical rehabilitation of the building had been commenced, the air conditioning, among other things, being put in a satisfactory condition.

Neither the amended Weiser plan nor the Mintzer plan of reorganization is fair, equitable and feasible and the court so finds. Extended analysis of these two plans is unnecessary to support this finding. The Weiser plan arbitrarily reduces the existing leasehold Ritter mortgage (which may or may not be valid) to $35,000 without the consent of the mortgagee and the Mintzer plan is illusory since it is based upon no firm financial underwriting commitments. Despite the fact that the trustees have recommended that no plan involving retention of the leasehold can presently be submitted, the court is not satisfied that a plan meeting the requirements of Chapter X cannot be submitted at some future time. Accordingly, the proceeding under Chapter X involving this debtor cannot be dismissed and under all the circumstances, it would be improvident at this time to enter an order adjudging the debtor a bankrupt.

Thus the court is left with the following applications undisposed of: the application of Leo Ritter & Co., the application of the trustees with respect to the landlord, and the cross-application of the landlord. These applications are disposed of as follows: The application of Leo Ritter & Co. for an order directing the trustees to pay the landlord the full rental reserved under the leasehold is in all respects denied. The trustees have advised the court that they are willing to withdraw as of the first of August, 1963 their application to restrain the landlord from exercising its right to terminate the subject lease. Permission is given to the trustees to withdraw their application and the same shall be deemed to be withdrawn as of the first day of August, 1963. The cross-application of the landlord to compel the trustees to adopt or reject the subject lease has become moot and is therefore denied.

The court finds that the fair and reasonable monthly rental value of the leasehold estate is $11,800 and the trustees are directed to pay that amount to the landlord for use and occupation for the month of July, 1963. The trustees may, if they are so advised, make an appropriate application to the court for consideration of the question as to whether the landlord should be compelled to return to the trustees the amounts in excess of $11,800 paid for use and occupation for March, April, May and June 1963.

If the reorganization proceeding relating to this debtor were dismissed, the proceeding instituted in the New York State Supreme Court in which John T. Cahill, Esq. was appointed receiver would be reinstated. In that event this court would be empowered to allow the reasonable costs and expenses of the debtor under Chapter X, and would be required to make appropriate provisions for the retransfer of the property to the State Court receiver upon such terms as might be equitable for the protection of the obligations incurred in the proceedings under Chapter X by the trustees, and for the payment of the costs and expenses of the Chapter X proceedings. Bankruptcy Act § 259. For the reasons heretofore stated, the Chapter X proceedings involving this debtor should not be dismissed. Nevertheless, since no fair, equitable and feasible plan of reorganization involving the retention of the leasehold by the debtor can be formulated at this time, it would be inequitable to prevent Leo Ritter & Co., the mortgagee, from proceeding with the foreclosure action initiated in the New York State Supreme Court prior to the filing of the reorganization petition herein or from taking any other action to protect its rights, as it may be advised.

■ The trustees are therefore directed to take such action as may be appropriate to surrender possession of the subject property to Leo Ritter & Co., as leasehold mortgagee, as of the close of business on the 31st day of July, 1963, subject, however, to the assumption by such leasehold mortgagee of such contracts as may have been made by the managing agent of the trustees in connection with the ordinary management and operation of the leasehold. Leo Ritter & Co., as mortgagee, is authorized and empowered to take such action as it may deem appropriate to enforce its rights under the said leasehold mortgage by way of foreclosure in the New York State Supreme Court or otherwise, and the order of this court of February 18, 1963 shall be deemed to be modified accordingly. The court, however, reserves jurisdiction to hear and determine the validity of the leasehold mortgages (including that of Leo Ritter & Co.) or any of them, upon an appropriate application by the trustees; provided that the trustees shall initiate such action within six months from the date hereof.

In the event that it is ultimately determined that the leasehold mortgage presently held by Leo Ritter & Co., mortgagee, is invalid for any reason whatsoever then, and in that event, the trustees shall be subrogated to the position of the said mortgagee in respect of the leasehold regardless of how such position may have been acquired by Leo Ritter & Co. Leo Ritter & Co. shall, however, have a prior lien upon the leasehold for any monies actually, reasonably and necessarily disbursed (to the satisfaction of this court) for the improvement and rehabilitation of the leasehold estate subsequent to its acquiring possession thereof, as well as for the amount of any and all management costs which this court may find to be fair and reasonable under the circumstances.

■ In view of the fact that the court finds that the administration of the leasehold estate by the trustees has been beneficial to the mortgagee as well as to the landlord, this court expressly reserves jurisdiction to determine the reasonable costs and expenses of administration of the debtor under Chapter X in connection with the administration of the leasehold estate and to make appropriate provisions for the imposition of a lien or charge upon such leasehold estate upon such terms as may be equitable for the protection and payment of such costs and expenses. In that connection the court expressly reserves jurisdiction to pass upon the final report and account of John T. Cahill, as receiver of the property of the debtor, and to determine the disposition of the amount attributable to such property and turned over by such receiver to the reorganization trustees herein.

The court has been advised that Fifty Seven Associates, landlord and fee owner, has made a proposal to the trustees that possession of the premises be turned over to it rather than to the mortgagee under stated terms and conditions. Should the trustees, Fifty Seven Associates and Leo Ritter & Co. reach a satisfactory agreement with respect to the surrender of possession of the property to the landlord instead of to the mortgagee then leave is hereby given to any of such parties to apply to this court, upon due notice to the Securities and Exchange Commission and other parties in interest, for approval of such agreement provided, however, that such application shall be made and a hearing held thereon prior to the first day of August, 1963.

The foregoing constitutes the findings of fact and conclusions of law of this court as well as the court's disposition of the matter, and no further order is required. It is so ordered.